FILED
SUPERIOR COURT
OF GUAM

2024 JAN 31 AM 9:46

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>TROY ASKAS aka Rolando Afkas Jackson aka Raul Jones aka Randy Frank aka Roland Jackson,<br><br>Defendant. | CRIMINAL CASE NO. **CF0713-23**<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on January 16, 2024, for hearing on Defendant **TROY ASKAS aka Rolando Afkas Jackson aka Raul Jones aka Randy Frank aka Roland Jackson's** ("Defendant") Motion to Suppress Evidence. Present were Assistant Attorney General Sean E. Brown on behalf of the People of Guam ("the Government") and Defendant with counsel Assistant Public Defender Alisha Molyneux. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On November 13, 2023, Defendant was indicted with one count of Possession of a Schedule II Controlled Substance (As a Third Degree Felony) and one count of Operation of a Motor Vehicle without a Driver's License (As a Violation). (Indictment, Nov. 13, 2023). These charges stem from the discovery of suspected methamphetamines in Defendant's vehicle after the

effectuation of a traffic stop on or about November 2, 2023. (Decl. of Gloria A.L. Rudolph, Magistrate's Compl., Nov. 4, 2023). Defendant did not have a valid driver's license, registration, or insurance on him. *Id.*

On November 21, 2023, at Arraignment, Defendant asserted his right to a speedy trial.

On December 11, 2023, Defendant filed the instant Motion. On December 22, 2023, the Government filed its Opposition.

On January 16, 2024, the Court heard sworn testimony from Port Police Officer Alex Tithingrad ("Officer Tithingrad"), Port Police Officer Kylie Maurer ("Officer Maurer"), and Defendant. At the hearing, the Court ascertained the following facts:

1. On or about November 2, 2023, around 7:00 p.m., Officer Tithingrad effectuated a traffic stop after observing a beige Nissan Sentra on the road with an expired registration tag.

2. Officer Tithingrad met with the driver, a male individual, who identified himself as Randy Frank. Officer Tithingrad identified Defendant in the courtroom as the same individual he pulled over on November 2.

3. Officer Tithingrad asked Defendant for his identification, proof of insurance, and vehicle registration. Defendant was unable to provide any of the documents requested. Defendant did not have any form of identification.

4. The vehicle also had a passenger. The passenger identified herself as Dorissa Frank, which Officer Tithingrad confirmed through her FSM passport. Mrs. Frank did not have a driver's license.

5. Officer Tithingrad called Guam Police Department dispatch to inquire about the vehicle. GPD gave Officer Tithingrad the name of the registered owner which was not "Randy Frank."

6. When Officer Tithingrad went to his vehicle, Officer Maurer arrived to assist. Officer Maurer heard over the radio that Officer Tithingrad was conducting a vehicle pull over and proceeded to his location to assist. Officer Tithingrad told Officer Maurer that the

operator did not have any form of identification, so Officer Maurer said she would speak to him.

7. Officer Maurer testified that she went to speak to the operator while Officer Tithingrad was at his vehicle for officer safety as the area was dark. Officer Maurer testified that she assumed Officer Tithingrad was going to try to issue a citation.

8. The driver of the vehicle also identified himself to Officer Maurer as Randy Frank.

9. Officer Maurer asked Defendant why he didn't have any identification on him and Defendant responded that he actually didn't possess any identification at all. Defendant indicated he was coming from the cemetery and that the passenger in the vehicle was his wife.

10. During her conversation with Defendant, Officer Maurer noticed that he was not able to make eye contact with her and observed him to be fidgeting with something in both hands. Officer Maurer testified that she believed Defendant was handling a cigarette. Officer Maurer asked Defendant if he was okay, to which he responded that he was just tired.

11. Officer Maurer asked Defendant if there was anything in the vehicle that she should know about, and Defendant responded that there might be an airsoft gun or a pellet gun. At this time, Officer Maurer instructed Defendant to exit the vehicle. Officer Maurer told Defendant to put both hands on the steering wheel and open the door with his left hand slowly and then step out and proceed to the rear of the vehicle. Defendant complied.

12. Officer Maurer asked Defendant if he consented to a pat down of his body. Defendant agreed. Officer Maurer did not find anything on him.

13. Officer Maurer asked Defendant if he had a firearms identification card. Defendant responded that he did not.

14. Officer Maurer then asked Defendant to search the vehicle, to include the trunk. Officer Maurer testified that Defendant agreed.

15. Officer Maurer also asked Defendant if there was anything else that she should know about and he said that there was a pipe and a syringe and then there was also ice that was in his wallet.

16. Officer Maurer testified that she asked Defendant if there was anything else in the car besides the airsoft or pellet gun because Defendant was still unable to make eye contact with her. Officer Maurer testified that while she was talking to him in the vehicle, she also noticed that his eyes were red and pupils were dilated, which indicated to her that he may be under the influence.

17. Officer Maurer testified that she told Defendant that if at any time he wanted her to stop searching the vehicle he could just let her know.

18. Officer Tithingrad testified that he was going to issue Defendant a citation but stopped because Officer Maurer told him that Defendant mentioned he had something in the vehicle ("a pellet gun or something"). Officer Tithingrad stopped to observe them for officer safety.

19. Officer Tithingrad testified that when Officer Maurer asked Defendant to exit the vehicle, everyone went to the rear of the vehicle.

20. Officer Tithingrad testified that he heard Officer Maurer ask Defendant for consent to search the vehicle and that he said "yes."

21. Defendant only provided verbal consent to the search and did not sign a written consent form.

22. Officer Maurer found the pipe and the syringe between the driver's door and the steering wheel in a small compartment and a bag with suspected methamphetamine in a brown Fendi wallet.

23. Officer Maurer did not find any identification or credit cards in the wallet.

24. Officer Maurer testified she asked Defendant if the wallet was his and he said it was. Officer Maurer testified she also asked Defendant for permission to actually open up the wallet and he said that it was okay.

25. Officer Maurer testified that Defendant never withdrew consent of the search of the vehicle while she was searching.

26. Officer Maurer testified that Defendant was polite when talking to her and that he seemed truthful.

27. When Defendant was brought to the Central Precinct, he was identified through fingerprint processing under a different name – Rolando Afkas Jackson. Defendant had outstanding bench warrants for his arrest for four cases.

28. Both Officer Tithingrad and Officer Maurer testified that Defendant was compliant with their directions.

29. Defendant testified that he was returning home with his wife to Kaiser from the Nimitz Hill Cemetery where his son is buried when he was pulled over.

30. Defendant admitted that he did not have a driver's license, car registration, or car insurance.

31. Defendant admitted that he told Officer Maurer that he might have an airsoft or pellet gun in the car. Defendant testified that he thought he might have had an airsoft or pellet gun in the vehicle because he remembered playing with one at his house before going to Nimitz Hill.

32. Defendant admitted that Officer Maurer first asked to pat him down prior to the search of the vehicle.

33. Defendant admitted that he consented to a pat down but denied giving consent to a search of the vehicle.

34. Defendant testified that Officer Maurer did not ask for consent to search the vehicle. Defendant testified that Officer Maurer searched the car on her own and told him not to lie to her because she saw what was in the car. Defendant testified that he told her that he had a syringe and a pipe in the car.

35. Defendant testified that he thought Officer Maurer was searching the vehicle for three to five minutes but was not really sure. Defendant testified that it was a long time.

36. Defendant denied he was trying to deceive the officers by giving another name.

37. Defendant admitted that he uses other names than Rolando Jackson.

38. Defendant testified that he does go by both Troy Askas and Rolando Jackson. Defendant testified that the correct spelling is Afkas, not Askas, and that Askas was spelled wrong by whoever was recording his name.

39. When Defendant was asked if he knew he had a warrant out for his arrest, he responded that he knew he had not been checking in for his cases.

## DISCUSSION

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

Defendant acknowledges that the stop itself was presumably reasonable but sets forth that any expansion of the stop was unreasonable and that he did not give consent to search the vehicle. *See generally,* Mot. Suppress, Dec. 11, 2023. The Government opposes, arguing that the stop in its entirety was reasonable and Defendant's consent was voluntary made. *See generally*, Opp'n, Dec. 22, 2023. As the basis for the effectuation of the traffic stop is not being disputed, the Court first turns to Defendant's argument that the expansion of the traffic stop was unreasonable. *See* Mot. Suppress at 2-4. Defendant sets forth that "the issue contested is not whether law

enforcement exceeded the fifteen-minute rule" but "whether law enforcement's actions were reasonable during the time needed to investigate expired tags." *Id.* at 3. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* (citation omitted).

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id.* at 355 (internal citations, quotation marks and alterations omitted").

In this case, Officer Maurer testified that she approached the vehicle to speak to the operator while Officer Tithingrad was at his own vehicle, presumably to write a citation. Officer Maurer testified that she went to speak with the operator while Officer Tithingrad was at his own vehicle for officer safety. Officer Maurer initially asked Defendant similar questions to those asked by Officer Tithingrad – what his name was, why he didn't have any identification, where he was coming from, and who was in the passenger seat. The Court finds that these questions were related to the traffic stop. During her conversation with Defendant, Officer Maurer noticed that he was not able to make eye contact with her and observed him to be fidgeting with something, possibly a cigarette, in both hands. Officer Maurer also noticed that Defendant's eyes were red and his pupils were dilated, which indicated to her that he may be under the influence of something. Officer Maurer asked Defendant if he was okay and Defendant responded that he was just tired. The Court does not find that these questions unreasonably prolonged the traffic stop. Officer Maurer then asked Defendant if there was anything in the vehicle that she should know about, to which Defendant responded that there might be an airsoft gun or a pellet gun. At this

point, Officer Maurer instructed Defendant to exit the vehicle for officer safety. "[I]t is well established that an officer effecting a lawful traffic stop may order the driver and the passengers out of a vehicle." *United States v. Williams*, 419 F.3d 1029, 1030 (9th Cir. 2005) (citation omitted). *See also Pennsylvania v. Mimms*, 434 U.S. 106, 111 fn. 6 (1977) ("We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *Rodriguez*, 575 U.S. at 356 ("Traffic stops are especially fraught with danger to police officers."). Therefore, the Court also does not find that Officer Maurer unreasonably prolonged the stop when she asked Defendant to exit the vehicle. Defendant complied with Officer Maurer's instructions and headed to the rear of the vehicle. Defendant testified that he then consented to Officer Maurer conducting a pat down search of his person. After Officer Maurer conducted the pat down, she asked Defendant for consent to search the vehicle, which both she and Officer Tithingrad testified Defendant agreed to.

"In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to the warrant requirement." *Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Therefore, the Court must examine, based on the totality of the circumstances, whether Defendant's consent was voluntary. *See id.* at ¶ 25. The Court examines the following factors:

> 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimidated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the defendant was in custody or under arrest when the consent was given; 5) whether the defendant was in a public or secluded place; and 6) whether the defendant objected to the search.

*Id.* (citation omitted). The Government has the burden to prove by a preponderance of evidence whether Defendant's consent was voluntary. *Id.* "[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973).

Here, Officer Maurer requested to search the vehicle after a traffic stop was effectuated. The traffic stop was effectuated in public. The Court does find that Defendant was still seized during the course of the traffic stop when he gave consent. Officer Maurer ordered Defendant out of the vehicle after Defendant disclosed that there may be an airsoft or pellet gun in the vehicle. Officer Maurer also testified that even if Defendant had not later been arrested for other things, she would not have let him drive away because he did not have a valid driver's license nor did the vehicle have a valid registration or current insurance. Thus, Defendant would not be free to drive away. However, the Court does not find that this factor weighs heavily against a finding of voluntary consent because Defendant was not placed in handcuffs nor was Defendant under arrest when consent was given. There was no testimony indicating that Defendant was threatened or intimidated by the officers nor that Defendant relied on any misrepresentations or promises made by the officers. There was no testimony that either Officer Maurer or Officer Tithingrad had their weapons drawn. Both Officer Maurer and Officer Tithingrad testified that Defendant gave consent for his vehicle to be searched. Officer Maurer further testified that she told Defendant that he could withdraw his consent at any time during the search of the vehicle, and that she also asked Defendant for consent to open up the wallet after retrieving it from the vehicle. Although Defendant testified that he did not consent to the search of the vehicle, the Court notes that he acknowledged that he goes by different names and that he knew he might be in trouble because he had not been checking in for his criminal cases since his son passed away. Thus, in examining the totality of the circumstances, the Court finds that Defendant's consent to the search of his vehicle was freely and voluntarily given and denies Defendant's Motion to Suppress.

//
//
//
//
//
//
//

*People v. Askas*
Case No. CF0713-23
Decision and Order

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. Parties shall return for a Status Hearing on **February 5, 2024** at **10:30 a.m.** As Defendant remains in an asserted status, the Court hereby sets a **Pre-Trial Conference** for **February 13, 2024** at **10:30 a.m.** and **Jury Selection and Trial** for **February 20, 2024** at **1:30 p.m.**

**IT IS SO ORDERED** this 31st day of January, 2024.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Askas*
Case No. CF0713-23
Decision and Order